Thank you. Thank you, Your Honor. If it please the court, it's actually Zyhere Fichman. Fichman. Okay. Thank you. Okay. My name is Richard Cornell. I represent Zyhere Fichman in this appeal from the Granite Summary Judgment on a Qualified Immunity Basis. And I have to say, I represent a very pleasant young black gentleman who did not commit an case. Well, the issue is like the probable cause. And so is there any dispute on the night of the robbery that Kendrick told Mercer that she was 220 percent sure that Fichman was involved in the robbery? Yes, there is. Her testimony in cross-examination at the preliminary hearing was 220 percent possible. When I asked Officer Mercer in his deposition about that, he said— But the probable cause has already happened by then. Is there any dispute that that's what, that, you know, I guess what I'm having, I'll just tell you up front what I have a little problems with that you have to overcome for me, is that it appears, and for those of us that have criminal law, it's not uncommon for people to point something out to the officers and make certain statements. And then later, if people go out and intimidate them, they get a whole different approach when they come, and they're afraid to testify. And it looks like that's what the situation is here. And the fact that someone gets intimidated and afraid doesn't negate what the officers were presented with at the time. And she calls 911 at the time, and I don't know, she apparently knows this person and makes a positive identification. So that's, the fact that she's intimidated later doesn't necessarily cast doubt on what the officer was told when he Kelly Kendrick's cross-examined testimony in this case, which Judge Dew unfortunately did not. She testified on cross-examination that she used the words 220% possible. And there's no recordation of what she actually said, not in writing and not tape recorded. And Officer Mercer in his deposition testified that independent of his police report, he couldn't recall what she said. So I would say it's 220% possible that she said 220% possible. Well, so that's, I'm looking, I'm looking at the, at the ERs on ER 169 and ER 170. On ER 170, she says I used 220% possible. And I, you followed up with the question that that was a gross exaggeration, but on 169, she was asked, did you ever say I'm 220% certain? And she says, I said that. Certain, certain is a little different from possible, but 220% is a pretty good number, even if it's just a possibility. It feels like anything in excess of a hundred would be, would be, it goes out of the possible and into the, into the probable. It's a strange statement. I think we can agree on that. 220, yeah, when it's above a hundred percent, what does it mean? But that isn't the only basis. Councilor, Councilor, before you, before you, before you go on, and I would like you to let you go on, but I do have a question. Is it your contention that Ms. Kendrick was not robbed or simply that your client wasn't the one who To be very honest with you, my contention is both. My contention is that my client did not rob Ms. Kendrick. Okay. That's, that's, that's gotta be your minute. That has to be your minimum position. Now, what evidence do you have that Ms. Kendrick was not robbed and that she fabricated the whole thing? Nope. I didn't see any evidence of that was put in here on anybody's part that she fabricated the robbery. Well, first off, we know you may have your own private suspicions, but I'm, I'm looking for the hard evidence in the record council. Okay. Let me put it this way. I do have my private suspicion and I've not taken the position that she wasn't, but there are some facts in this case that don't add up. Uh, for one thing, the only person she identifies as her boyfriend, Delapaz, she and Delapaz had just had a breakup. The neighbors testified that these two fought all the time. Uh, the supposedly missing TV could have been the TV that Delapaz took and the broke, the broken cell phone could be the product of the last argument that Kendrick and, and Delapaz had. So you're right. I mean, is it, it's a private suspicion and it's not a position that I've taken in the briefs. But I think one thing that cuts against your client in the sense is because I know that he says that officer Mercer had a vendetta against him, but officer Mercer didn't interject himself into this. She called nine one one and he comes out and he's presented with identified as one of the, one of the robbers. And she says that she knows this person. So what he's presented with and whether he had probable cause, you know, your, your point of why your client might've been found not guilty later because these people, yeah, you know, maybe they make up stories or maybe they call the police and maybe they fight all the time and they do all of that. But it's not really officer Mercer's problem when he gets called out nine one one and gets dispatched and he's told a robbery happens, he's identified and that, that there's probable cause to arrest your client. Let me, let me go to answer this by going to a point that you made earlier. You had mentioned that she, Ms. Kendrick claimed that she was bullied or intimidated into exonerating Fitchman by Fitchman's family. We didn't address that part in, in the brief. What we did address though, and she testified to this on cross-examination and a prelim that everything she said to a guy named Caden was true. Caden is a friend of Delapaz. He has no skin in this game, so to speak. And what did she say? It's, it's at pages six and seven of the blue brief. That's all they cared about. The gang unit was asking me everything I knew about YLOC, but I didn't really know anything because all I ever did was hang with Mario and he's never really around Z, that's my client or Kenny, meaning Davis or any of them that much. They asked me if I'd ever been to the last known address they had for YLOC gang members and it was Z's house. And I said, I wasn't sure. The next thing I know, more gang unit shows up at my house saying I needed to go with them and help them identify YLOC gang members. And they had Z and Ace and two other guys sitting down and told me to say if I recognized them. And I was like, yeah, I don't know their names though. And they drove me to a witness relocation program. And I've been sitting here ever since. I probably lost my job and everything. I confronted officer Mercer with that in his deposition. He didn't deny the truth of any of that. What does that tell us? YLOC is not a gang. It's a rap. Wait, wait, how can you deny anything that you just related to us? Because that was a conversation between Ms. Kendrick and Caden. Well, I mean, how could he possibly deny anything that was there? He was not part of that conversation. Is anything in the statement false to his knowledge? What that statement tells us is that the police were focused on YLOC and Mercer knew that Fitchman was a part of YLOC. Mercer had been in the neighborhood where Fitchman lived and had contact with him. YLOC is not a gang. Fitchman is not a member of a gang. Delapaz is not a member of YLOC. Why are they even talking about YLOC? Why are they assuming that this gang of thugs are members of YLOC? There's no basis, none, to conclude with that. Was officer Mercer told by Lieutenant Rowe and Sergeant Chavez that the robbery was gang related? Well, there's a dispute on that. Okay, but as to the probable cause, was he told that before the arrest happened? Well, I guess if we believe Rowe and Chavez, yes, he was. Yes, he was told that. So why isn't he entitled to rely on that at that time regarding probable cause? Because it seems to me you're conflating what evidence is required to convict someone at the end as opposed to what needs to be presented to show probable cause. So maybe you can help me. Do you have a best case that would show that there's a lack of probable cause under the circumstances? We started with YLOC is not a gang. Fitchman is not a gang member of any gang. YLOC has never been certified by regional gang unit as a gang. We go from there. We've talked about 220%. Is that a case? No, I said the totality of the circumstances. We talked about her claim that she identifies Fitchman from his distinctive eyes and his low, smooth voice. Number one, he doesn't have distinctive eyes. Number two, he doesn't have a low, smooth voice. Number three, an armed robber says the words that supposedly this armed robber said wouldn't say them in a low, smooth voice. And number four, Mercer admitted that he couldn't recall anything distinctive about him. Counsel, this all goes right to the heart of Judge Callahan's question about the difference between probable cause to arrest and evidence beyond a reasonable doubt necessary to convict. All of the arguments that you are making are arguments that could be made to a jury on the merits at a trial. But we've got officers who have somebody who's called 911, who's described with great specificity the number and attire of the robbers, described with specificity the items taken, and then leads the police to their home where they find the car that she's previously described. They ask her then about the people in the car, and she identifies them one by one as the people who were there. Now, what were the police supposed to do at that point that would did not have probable cause? Well, first off, she testified that she couldn't identify his car at the preliminary cross-examination. But besides that, when they go there, the robbers are supposedly in all black, except for Delapaz. Fitchman is wearing gray sweatpants, no boots, nothing on his feet, and no shirt. But she does have some match on what her description was in the clothing, correct? No, I would not agree with that. But she's identified the black Honda, and the black Honda is registered to Fitchman. She took them straight to the place where the Honda was. It matched everything that she told them at the scene of the crime. I would not agree. Mercer took them there. Mercer directed Hodge to go to a completely different part of town to look for the suspects, the people that Delapaz would hang with. And then Mercer told Hodge, come back here, I have found him. And that's what happened. Like I said, Mercer has been in that neighborhood before. He knows what kind of vehicle that Fitchman drives. And like I say, I don't want to reserve any time for rebuttal. You're down to a minute and a half. Okay, let me just make one quick point, and then I'll reserve. I have no problem with a one hour stop in detention. There, we can ask the questions about what's your story, we find out he has an alibi, we look at the text messages, we see that he's having these lovey dovey texts with his girlfriend. But I want to ask you about that because these evidentiary rulings were made that excluded certain matters from consideration. What difference does any of that make? Because I look through that excluded material, and I'm not sure I saw how it altered the quantum of facts in the analysis. Well, there I rely on, I know they're sister circuits, but Logsdon and Haines, where the arrested individual had an alibi, and they didn't investigate the alibi. And in this case, the alibi was easily investigatable because Carlos Lee was right there when he was arrested. Nobody thought to talk to him. And Fitchman is with three other guys, freestyling rap beats in the car. And according to Kendrick, there are four people, four armed robbers in addition to why are those other three not even interviewed? If they had been, they would have seen that Fitchman had an alibi. And it seems to me, if that's required by Logsdon and Haines, fourth and 10th circuit ought to be required by this circuit. I'll reserve. All right, well, you don't have any time left, but I'll give you a minute for rebuttal. Okay. Thanks. All right, we'll go to the appellee. Good morning. Good morning, judges. Brandon Sendall, senior assistant city attorney for the city of Barks. Keep your voice up, please. Can you stay by your mic? Thank you. Yes, I have it over here with the phone. May it please the court, Brandon Sendall with the city of Barks and Officer Mercer. To go straight to Judge Bybee asked a pre-pointed question earlier, where is there evidence that Kelly Kendrick fabricated the robbery? Counsel for Fitchman said he had a suspicion. That's not evidence. That's the entire issue with this appeal. And really with the underlying motion for summary judgment and the opposition of that motion for summary judgment, Fitchman did not come with any evidence, certainly no admissible evidence that would factor on probable cause. He said, you know, she might've been mad at De La Paz since they had broken up the day earlier. Well, then why would she not just frame De La Paz? Why bring Fitchman into it? And to go to the case law, counsel just referenced Sixth Circuit decision in Logsdon v. Haynes. It just doesn't apply. There, a responding officer was informed of a report of a trespass. And when the officer arrived on scene, he didn't witness the trespass. He talked to another person who didn't witness the trespass. And when there was another person on scene that was gonna tell what happened, he said, tell it to the judge. And arrested the person and took off. That's obviously not probable cause. And that's not even close to what happened in this case. Can I ask you about the evidentiary rules? I had a hard time making heads or tails about what kind of rules were applied and sorting out the evidence here. I don't understand why Hernandez's testimony about what she overheard Kendrick say to the officers would be excluded when other people were allowed to testify to what she said. It wasn't being offered for the truth. It's what facts did she put in the officer's head that he then could use for probable cause, not whether they were true. And yet it was excluded as hearsay because on the grounds it was offered. I can't make heads or tails of that. Can you help me? There are two reasons I believe, officer. One, it was double hearsay. It was Hernandez saying what she heard Kendrick say to the responding officers. That would have been Sergeant Rowe and Sergeant Chavez. But that's not, what Kendrick says to the officer is not hearsay because what it's being introduced for is that Kendrick said those words to the officer, not that Kendrick's assertions were true. It's what the officer got from Kendrick. So that element's not hearsay. Where's the hearsay in this? Well, you are right, Judge. It depends on what it's being offered for. I believe it was being offered for the truth of the matter asserted. And that truth of the matter asserted that Fishman was asserting was that she said that Kendrick said that she never identified Fishman. And the other problem with that statement was Yvonne Hernandez admitted she wasn't present for the entire conversation. So even if she had said that, Judge, she could not have said that based on personal knowledge, knowing that Kelly Kendrick did not identify Zaire Fishman at any time during that initial interview. So going to some of the other case law that's cited, mainly Strzokman and Hopkins. What about Mercer's police reports, reports that he wrote? Why were those excluded? And how is that proper? He's the defendant. Because they are hearsay. They're out of court. It's not hearsay if the defendant's statement is used against him. I don't understand how that's hearsay. The defendant's own statements when used against the defendant are not hearsay. I understand, Judge. And the other issue is that Fishman didn't explain why they should be admissible. And that was the other issue. When Officer Mercer filed the initial motion for summary judgment, there was, I looked back at it last night, there was about 17 pages dealing with the evidentiary issues and what should be considered, what should not be considered. And in the appeal here before the Ninth Circuit, mainly in the reply brief, this is on page 12, Fishman argues that Mercer never argued in the original MSJ that the district court couldn't consider certain things. That's just not true. There was assertion after assertion on evidentiary issues. And it boils down to it's incumbent on the party presenting evidence to show how it reaches a jury. Why wouldn't his own reports about his own investigation of this case be admissible in assessing whether he had probable cause in making an arrest? Judge, maybe they could have been. But I would, looking at the contents of the police report, it doesn't change whether he had probable cause. That's a different issue. And that was a question I asked your opposing counsel, which whether anything in these made a difference. But on the threshold evidentiary question, I'm just having a really hard time seeing how this was properly excluded. Understood, Judge. To the extent it wasn't properly excluded, it's harmless error because she considered Officer Mercer's deposition testimony that corroborates pretty much everything in his initial police report. And just going back to the issue on is the evidence that he did not have probable cause, that Officer Mercer did not have probable cause. When you're talking where is the evidence or where is Waldo here, I think he also, appellant complains that Officer Mercer had a vendetta against him. What evidence is there in the record of that? There's nothing. There's actually the complete opposite. It's undisputed that there's almost no history between these two. In Mr. Fishman's deposition, he stated that he had never had a run-in with Officer Mercer ever. Officer Mercer actually remembered one innocuous meeting where it was at the end of his shift, there was a scuffle in the parking lot of a Starbucks and he briefly detained everybody. Nobody was arrested and everyone went their way. The idea that Officer Mercer would frame Zaire Fishman when there is no history between the two, that is 100% undisputed. There's no evidence of a vendetta, especially when you look at the authenticated CAD notes that document the order in which every police officer arrived at the scene. Officer Mercer was at earliest the fourth, it looks like the fifth officer to arrive. There's ample evidence that she identified Fishman to the initial responding officers, that was Sergeant Rowe and Sergeant Chavez. Well, was Officer Mercer entitled to rely on representations from Lieutenant Rowe and Sergeant Chavez that the robbery was gang-related and if so, why? Respectfully, I think that's irrelevant, Judge, because Officer Mercer didn't focus his investigation or the arrest on whether or not it was gang-related. It was a simple arrest for armed robbery. That was the background, that was the reason why he was there, but it doesn't matter. He was called because there is evidence of a crime. Yes, Officer Rowe recognized the names that he associated, and so he requested the regional gang unit of which Officer Mercer was a member, but, and the other issue is he didn't rely solely on that representation. He interviewed Kelly Kendrick. It goes to the issue that Fishman incited to a handful of cases that say, you know, police officers can't solely rely on the report of a citizen witness. He didn't solely reply on the report of a citizen witness. This wasn't a situation like Struckman where a police officer comes out just based on a 911 call, guns drawn, doesn't ask any questions, and arrests the first person on scene. He spoke with Officer Rowe and Officer Chavez about what she'd reported. He independently interviewed her and at his deposition testified that she again identified Fishman and directly denied that he planted the name Fishman in her head. That's, I mean, that's it. That's probable cause, but you couple that with the other corroborating evidence. You have her frantic demeanor at the scene. Even 20 minutes after the initial 911 call when he interviewed her, Officer Mercer stated she was visibly upset and crying uncontrollably and had to be calmed down multiple times so he could speak with her. She reported that she already knew Fishman, so there was familiarity there, so she would be able to identify him. She stated she recognized him by his physical appearance and his voice. There were the photographs of her apartment, the broken phone, the broken cell phone that would stop her from calling 911, her identification of a car that was similar to Fishman's at the location and her identification at the second location, the Centennial location. To the question of whether he should have been able to rely on that, maybe there's an argument that if that's all he went off of and went over and arrested him without any further investigation, but that's not what happened. There was ample corroborating evidence. So going back to the summary judgment standards and the evidentiary standards, this underlying motion for summary judgment was basically an FRCP 56C1 and C2 motion in which Officer Mercer, who does not have the burden of proof, presented all of the evidence, presented affidavits, presented deposition testimony, presented authenticated evidence, and under FRCP C1 and 2, it clearly states that the party can object to the opposing party's cited material, that it can't be presented in the form admissible at trial, or that the opposing party can't produce admissible evidence to support facts. That's exactly what happened here, and I mean, simply put, everything that has been cited in opposition does not refute probable cause. Do either of my panel members have additional questions? We don't appear to have any additional questions. Do you have anything additional? I don't have anything additional, Judge. Thank you. Mr. Cornell, I've given you one minute. Thank you very much for your courtesy. In adjudicating this case, I would ask this court to look at the facts of this case and compare it against Struckman and Hopkins. You can't arrest solely based on what an alleged victim says. This court has made that clear. This court has also made it clear in Brome v. Bogan that an arresting officer can't turn a sculpatory evidence. In this case, there was plenty of it, even before he was arrested, and I would ask that this court grant Mr. Fitchman the right to a jury trial. Thank you very much. All right. Thank you both for your argument in this matter. This case will stand submitted.
judges: BYBEE, CALLAHAN, COLLINS